IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Criminal No. 3:24-cr-122-RCY-1 |
| WILLIAM THOMAS MORTON, JR., | |
| A.k.a. "Skillet," | |
| Defendant. | |

## STATEMENT OF FACTS

The United States and the defendant, WILLIAM THOMAS MORTON, JR., A.K.A.

"SKILLET," (hereinafter, "the defendant"), agree that at trial, the United States would have

proven the following facts beyond a reasonable doubt with admissible and credible evidence:

1.     Starting on or about April 1, 2024, and continuing through and including August

22, 2024, in the Eastern District of Virginia and elsewhere within the jurisdiction of the Court,

the defendant did knowingly combine, conspire, confederate and agree with others, known and

unknown to transport, transfer and cause to be transported firearms in and affecting interstate and

foreign commerce, while knowing and having reasonable cause to believe that the use, carrying,

or possession of a firearm by the recipient would constitute a felony, and to receive firearms

from another person, in and affecting interstate or foreign commerce, while knowing and having

reasonable cause to believe that such receipt would constitute a felony, all in violation of Title

18, United States Code, Section 933(a)(2), (a)(3) and (b).

2.     On or about April 4, 2024, the defendant did knowingly and intentionally

distribute a mixture and substance containing a detectable amount of cocaine, a Schedule II

controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and

(b)(1)(C).

3.    In March 2024, the Bureau of Alcohol, Tobacco, Firearms, and Explosives

("ATF"), initiated a proactive investigation into Violent Crime Initiative ("VCI") areas of the

City of Richmond, Virginia, which included Fairfield, Mosby, and Gilpin Courts. Between

March 20, 2024 and August 22, 2024, ATF conducted numerous controlled purchases of

firearms and narcotics, utilizing professional confidential informants ("CIs"). The controlled

purchases were all made in the VCI areas or involved individuals from those areas. The

controlled purchases and interactions between the CIs and dealers were captured on electronic

surveillance devices.

4.    On April 1, 2024, in furtherance of the firearm trafficking conspiracy, defendant

obtained from a coconspirator a Privately Made Firearm ("PMF"), 9mm pistol, with "80 Percent

Arms" printed on the polymer frame, and a Glock slide, bearing serial number BNYN047, and

sold the firearm to one of the CIs. Also, in furtherance of this conspiracy, defendant

accompanied the CI during the sale of firearms by his coconspirators to the CI on April 8, 2024,

and April 10, 2024, receiving a brokerage fee for each sale from the CI. Also, in furtherance of

this conspiracy, defendant sold a firearm to the CI on April 23, 2024.

5.    On April 4, 2024, defendant sold the CI approximately 2 grams of cocaine for

$160 in official government funds. The suspected cocaine was submitted to the Drug

Enforcement Administration's Mid-Atlantic Laboratory ("DEA Lab") where it was determined

to be 1.98 grams of a mixture and substance containing cocaine, a Schedule II controlled

substance.

6.    On April 8, 2024, defendant sold the CI a half of an ounce of cocaine for $460 in

official government funds. The suspected cocaine was submitted to the DEA Lab where it was

determined to be 13.7 grams of a mixture and substance containing cocaine, a Schedule II controlled substance.

7.      On April 23, 2024, defendant sold 10 grams of "heroin" to CI for $300 in official government funds. The suspected heroin was submitted to the DEA Lab where it was determined to be 9.67 grams of a mixture and substance containing fentanyl, a Schedule II controlled substance.

8.      On April 26, 2024, defendant sold an ounce of "heroin" to CI for $700 in official government funds. The suspected heroin was submitted to the DEA Lab where it was determined to be 27.85 grams of a mixture and substance containing fentanyl, a Schedule II controlled substance.

9.      On May 2, 2024, defendant sold an ounce of "heroin" to CI for $725 in official government funds. The suspected heroin was submitted to the DEA Lab where it was determined to be 28.2 grams of a mixture and substance containing both heroin, a Schedule I controlled substance, and fentanyl, a Schedule II controlled substance.

10.     This statement of facts includes those facts necessary to support the plea of guilty by the defendant. It does not include each and every fact known to the defendant or to the United States, and it is not intended to be a full enumeration of all of the facts surrounding the defendant's case.

11.     The actions of the defendant, as recounted above, were in all respects knowing and deliberate, and were not committed by mistake, accident, or other innocent reason.

Respectfully Submitted,

JESSICA D. ABER
UNITED STATES ATTORNEY

3

Date:    1-16-2025      By: _____

Olivia L. Norman
Assistant United States Attorney
Katherine E. Groover
Special Assistant United States Attorney

      After consulting with my attorney, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

Date:    1-16-25      _____

WILLIAM THOMAS MORTON, JR.,
Defendant

      I am defendant's attorney. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

Date:    1/16/25      _____

Joseph S. Camden
Assistant Federal Public Defender
Attorney for Defendant

4